**SANOFI–AVENTIS DEUTSCHLAND GmbH, Plaintiff,**

v.

**GENENTECH, INC. and Biogen Idec, Inc., Defendant.**

**Civil Action No. 9:08–CV–203.**

United States District Court,
E.D. Texas,
Lufkin Division.

March 19, 2009.

fall within the policy's professional services exclusion.

Jim Mitchell Smith, Lawrence Louis Germer, Germer Gertz, L.L.P., Beaumont, TX, Aaron F. Barkoff, Alison J. Baldwin, Joshua R. Rich, Paul H. Berghoff, McDonnell Boehnen Hulbert & Berghoff, Chicago, IL, for Plaintiff.

Charles K. Verhoeven, Eric Wall, Quinn Emanuel Urquhart Oliver & Hedges LLP, San Francisco, CA, Collin Michael Maloney, Otis W. Carroll, Jr., Ireland Carroll & Kelley, Tyler, TX, Gabriel S. Gross, Victoria Fishman Maroulis, Quinn Emanuel Urquhart Oliver & Hedges, Redwood Shores,

CA, Donald Ross Ware, Claire Laporte, Foley Hoag LLP, Boston, MA, J. Thad Heartfield, M. Dru Montgomery, The Heartfield Law Firm, Beaumont, TX, for Defendant.

## ORDER DENYING DEFENDANTS' MOTION TO CHANGE VENUE

RON CLARK, District Judge.

Plaintiff Sanofi–Aventis Deutschland GmbH ("Sanofi") filed suit against Defendants Genentech, Inc. and Biogen Idec Inc., claiming that nine of Genentech's biotherapeutics infringe United States Patent Nos. 5,849,522 and 6,218,140. Both of the patents are directed toward nucleic acid enhancers for cellular expression systems that can be used to produce drugs or antibodies for human therapy. Genentech now moves to transfer venue to the United States District Court for the Northern District of California, alleging that one of the Defendants, some employees of that Defendant, several non-party witnesses, and much of the documents and evidence likely to be relevant are located in that District.

Defendant Genentech has previously filed suit in the Eastern District of Texas when it wanted to be a Plaintiff here. Sanofi has no presence in California, and the question of whether Sanofi is even subject to personal jurisdiction in the Northern District of California remains an open one. Defendant Biogen also has no presence in the Northern District. Potential key witnesses are scattered across Europe and the Eastern United States, at locations closer to Texas than to California. Additionally, litigation in the Northern District would likely be more expensive and time-consuming. Patent cases which proceed to trial in the Eastern District are usually resolved in less time than they are in the Northern District, and the residents of the Eastern District have an interest in the outcome of this case because the allegedly infringing products are pharmaceuticals that are sold here. After evaluating the venue transfer factors in accordance with Fifth Circuit precedent, the court finds that Genentech has not demonstrated that the Northern District would be "clearly more convenient" than the Eastern District. The motion to transfer is denied.

### I. Background

The following facts are undisputed, unless otherwise noted. Sanofi is a German corporation with all of its offices in Germany. It has no offices or operations in the United States. The six inventors named on the '522 and '140 patents performed the research involved in Germany and Switzerland. The patents were originally assigned to Behringwerke AG, a German company no longer in existence, and were eventually assigned to Sanofi. At least five of the six named inventors still reside in Germany or Switzerland; Sanofi represents that the sixth lives in Switzerland, but has not yet been able to contact him.

The patents-in-suit are both continuations of the same patent application, originally filed in the United States on August 23, 1985 ("the '816 application"). The '816 application claims priority to a German application ("the '140 application") filed on August 24, 1984. The specification for both is the same. The '522 and '140 patents were prosecuted by the Washington D.C. offices of Finnegan, Henderson, Farabow, Garrett, and Dunner, LLP. Although three of the twelve prosecuting attorneys now reside in the Northern District of California, none of the prosecution work was performed there. The remaining nine reside outside of the Northern District.

Sanofi accuses nine biotherapeutic products of infringing the patents-in-suit. The accused products are used to treat illnesses like cystic fibrosis, lung cancer, and

non-Hodgkin's lymphoma. Defendant Genentech developed eight of the nine products at issue, and collaborated with Defendant Biogen with respect to the ninth, Rituxan®.

Defendant Genentech is a corporation incorporated under the laws of Delaware, with its corporate headquarters in San Francisco. San Francisco is located in the Northern District of California. Genentech has additional operations in two other California towns not located in the Northern District—Vacaville in the Eastern District and Oceanside in the Southern District—as well as in Singapore. Biogen Idec is a Delaware corporation with its corporate headquarters in Cambridge, Massachusetts.[1] Biogen also has significant operations in North Carolina, Washington, D.C., and San Diego, California. Biogen's work relating to Rituxan® was performed at the San Diego facility, which is located in the Southern District of California.

Genentech identifies by name a number of party and non-party witnesses located in the Northern District of California, and represent that all documents associated with research and development are located either at Genentech's facility in San Francisco or Biogen's labs in San Diego. At the same time, Genentech is licensed to produce at least two of the accused products—Avastin® and Rituxan®—at facilities outside the Northern District of California, and Biogen has no research or corporate presence in the Northern District.

The instant case was filed on October 27, 2008. Several hours later, Genentech and Biogen filed a declaratory judgment action against Sanofi in the Northern District of California, alleging that the '522 and '140 patents are invalid and not infringed. *See Genentech, Inc. et al v. Sanofi–Aventis Deutschland GmbH et al.,* Case No. 3:08–cv–4909 (N.D.Cal.2008). Genentech filed a Notice of Pendency of Other Action of Proceeding in the California case, suggesting that both cases be consolidated in that court. Sanofi subsequently moved on December 9, 2008 to dismiss the California case for lack of personal jurisdiction, also requesting that the California court defer to this court to decide the appropriate forum. Genentech then filed a motion to compel jurisdictional discovery in the California case on January 9, 2009. Before Sanofi responded, Genentech filed the instant motion to transfer in this court on January 22.

Although neither side discusses this in their briefing, Genentech has, in the past, found the Eastern District of Texas to be a convenient forum in which to file its own lawsuit against a company with no presence in Texas. *See Genentech, Inc. v. MedImmune, Inc.,* Case No. 2:06–cv–20 (E.D.Tex.2006). According to the Complaint in that case, Genentech sued MedImmune, a Delaware corporation with its principal place of business in Maryland, for infringing United States Patent Nos. 6,267,958 and 6,685,940. Genentech alleged that MedImmune infringed the '958 and '940 patents, which were directed to a lyophillized protein formulation, by making and selling a product named Synagis® which was available in a lyophillized powder formulation "in this district and throughout the United States." Doc. # 1, at p. ¶ 11. This was the sole basis alleged for venue.

## II. Applicable Law

■ Genentech moves to transfer venue pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that a district

---

1. East Coast-based Biogen, Inc. merged with California-based IDEC to become Biogen Idec in 2003.

court may transfer a civil action to any district in which it might have been brought "[f]or the convenience of parties and witnesses" and "in the interests of justice." The goal of Section 1404(a) "is to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964). The threshold determination to be made under Section 1404(a) is whether the claim could have been filed in the judicial district to which transfer is sought. *In re Horseshoe Entertainment*, 337 F.3d 429, 433 (5th Cir.2003), *cert. denied*, 540 U.S. 1049, 124 S.Ct. 826, 157 L.Ed.2d 698 (2003).

 If so, the court's analysis turns to the convenience of the parties and the witnesses. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir.2008) [2] ("[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. When the movant demonstrates that the transferee venue is *clearly* more convenient, however, it has shown good cause and the district court should therefore grant the transfer.") (emphasis added); *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed.Cir.2008) (applying *In re Volkswagen* ). This determination involves examining several private and public interest factors, none of which are given dispositive weight individually. *In re Volkswagen*, 545 F.3d at 315. The movant bears the burden of proof in demonstrating that a transfer is warranted. *See Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966).

 The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of the witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *In re Volkswagen*, 545 F.3d at 315. The public interest factors consist of (1) the administrative difficulties caused by court congestion; (2) the local interest in adjudicating local disputes; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems in conflict of laws. *Id.*

 Although Fifth Circuit law holds that the Plaintiff's choice of forum is entitled to some deference, *In re Horseshoe Entertainment*, 337 F.3d at 434–35, the *In re Volkswagen* court made it clear that this is not an independent factor in a Section 1404(a) analysis. *In re Volkswagen*, 545 F.3d at 314, n. 10. Rather, the Plaintiff's choice of forum is taken into account because it "places a *significant burden on the movant* to show good cause for the transfer." *Id.* (emphasis added).

The Fifth Circuit has also set out what it terms the "100 mile" rule, which requires

---

**2.** The October 2008 *In re Volkswagen* opinion was the last in a long and complex line of decisions. The district court denied Volkswagen's motion to transfer venue in 2006, as well as its motion for reconsideration in 2007. The first appellate panel opinion in *In re Volkswagen of America, Inc.*, 223 Fed.Appx. 305 (5th Cir.2007) (per curium), affirmed. After Volkswagen filed a petition for a panel rehearing, the order was withdrawn and eventually superceded by *In re Volkswagen of America, Inc.*, 506 F.3d 376, 380 (5th Cir. 2007), which reversed the district court. The Fifth Circuit subsequently granted rehearing *en banc*, *see In re Volkswagen of America, Inc.*, 517 F.3d 785 (5th Cir.2008), which had the effect of vacating the panel opinion. *See Byrne v. Butler*, 845 F.2d 501, 507 (5th Cir. 1988). The court finally issued *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir.2008) in October 2008. The Supreme Court denied certiorari on February 23, 2009. *Singleton v. Volkswagen of America, Inc. et al.*, —— U.S. ——, 129 S.Ct. 1336, 173 L.Ed.2d 587 (2009).

that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re TS Tech,* 551 F.3d at 1320 (quoting *In re Volkswagen AG,* 371 F.3d 201, 205 (5th Cir.2004)).

## III. Analysis

### A. *Whether the action could have been brought in the Northern District of California*

28 U.S.C. § 1400(b) states that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Under 28 U.S.C. § 1391(b)(1), venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same State." *See also* Section 1391(c) ("[A] defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.").

Defendant Genentech maintains its headquarters in the Northern District of California, and was subject to personal jurisdiction there when the action commenced. Defendant Biogen Idec maintains a substantial research and development presence in San Diego, which is located in the Southern District of Cali-

fornia, and thus resides in the same state as Genentech. Therefore, this action could have been brought in the Northern District of California. As discussed below, however, the question of whether Sanofi *could* have brought this suit in the Northern District is distinct from whether it is itself subject to personal jurisdiction there, having chosen to file suit in the Eastern District of Texas instead.

### B. *Private Interest Factors*

#### 1. *The relative ease of access to sources of proof*

■ Genentech argues that a "substantial amount" of the evidence relating to the accused products and the patents-in-suit is located in the Northern District of California. Specifically, Genentech points to the fact that all of its official corporate records are stored at its headquarters in San Francisco, meaning the records relevant to eight of the nine accused products are located there. Because Biogen maintains its records relating to development of the ninth product at its facility in San Diego, all research and development records for the accused products are located either in the Northern or Southern Districts of California. Genentech also argues that the files of three of the prosecuting attorneys and two authors of the prior art cited during prosecution are located in the Northern District.[3]

However, Genentech has the burden to demonstrate that the Northern District, as

---

**3.** During prosecution, a total of thirty-four references were cited by the applicants and the PTO, with eighty-five different individuals named on these references as authors or inventors. Genentech represents that two of these individuals reside in the Northern District of California, namely Raxit Jariwalla and Robert Tijan. Five other authors live elsewhere in California. Of the remaining seventy-eight authors, these individuals reside in a number of foreign countries (Italy, France, Germany, Switzerland, Uganda, Sweden, the United Kingdom, Japan, The Netherlands, and Israel) and a multitude of different states around the United States (Massachusetts, Utah, Maryland, New Jersey, New York, Georgia, Missouri, Washington, Pennsylvania, Michigan, Illinois, Connecticut, Oregon, Texas, Washington, D.C., Virginia, Iowa, and Florida). One is deceased, and the whereabouts of two more are unknown. Pl. Resp., Ex. 10–A [Doc. # 39].

the transferee venue, is *clearly* more convenient than the Eastern District. *In re Volkswagen,* 545 F.3d at 315. Merely pointing to the presence of some documents which may or may not be relevant in the Northern District is not sufficient, when all of Sanofi's records and those of the patents' inventors are located in Germany and/or Switzerland. And while perhaps located in the *state* of California, neither Biogen nor any of its records are actually found in the transferee venue. Sanofi also disputes that all of the relevant records would be located at Genentech and Biogen's facilities in San Francisco and San Diego, respectively, pointing out that both Defendants maintain multiple offices outside the Northern District, namely in Oceanside or Vacaville, California, Massachusetts, North Carolina, and Washington, D.C. Massachusetts, North Carolina, and Washington, D.C. are closer to Lufkin, Texas than to San Francisco, California.

It is also unlikely that any of the relevant prosecution documents would be found in the Northern District. It is true that several of the prosecuting attorneys now work in that District.[4] However, because the patents were actually prosecuted by the Washington, D.C. offices of Finnegan, Henderson, Farabow, Garrett, and Dunner, LLP, it is far more plausible that any prosecution documents would be located there. Again, Washington, D.C. is much closer to Lufkin than to San Francisco.

The court also does not understand, and Genentech does not explain, why the location of the authors of the prior art cited to the PTO would be relevant at all. It is highly unlikely that any of these authors would be called to testify at deposition or trial, or that any of their personal records relating to the references would contain relevant information. This is especially true since neither of the references the two individuals located in the Northern District co-authored ever formed the basis for a rejection by the PTO.[5] Even if the documents of prior art authors could be considered relevant, the remaining authors identified on references submitted to the PTO during prosecution are not found in that District and, in fact, are located world-wide.

To summarize, Genentech has pointed to the fact that many of the documents related to research and development of eight of the nine accused products are likely to be located in the Northern District of California. It is undisputed that no documents are located in the Eastern District of Texas. On the other hand, none of the documents relating to the ninth product are found in the Northern District. In fact, none of Biogen's records would be found in the Northern District, as it maintains no research or corporate presence there at all. All of Sanofi's documents, including the records of all the inventors of the patents-in-suit, are located in Germany and/or Switzerland.[6] Documents relating

4. The remaining nine prosecuting attorneys are located in a number of different places: one resides in Rockville, Maryland, one in Cambridge, Massachusetts, five in Washington, D.C., one in Seattle, Washington, and one in St. Louis, Missouri. Pl. Resp., Ex. 9 [Doc. # 38]. With the exception of the individual living in Seattle, all are closer to Lufkin than to San Francisco.

5. In contrast, Sanofi points out that the prior art author whose patent was cited most frequently during prosecution, Dr. Mark Stinski, lives in Iowa City, Iowa, which is much closer to Lufkin than to San Francisco.

6. The last known addresses for the six inventors locate them in Germany or Switzerland. Pl. Resp., Ex. 7 [Doc. # 38]. Sanofi's offices are located entirely in Germany. Pl. Resp., Ex. 2.

to prosecution of the patents are most likely located in Washington, D.C. Even if the records of prior art authors could somehow be considered relevant, eighty-three of the eighty-five authors cited during prosecution are not located in the Northern District of California.

■ The fact "that access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *In re Volkswagen,* 545 F.3d at 316; *see also In re TS Tech,* 551 F.3d at 1321. At the same time, both the *Volkswagen* and *TS Tech* courts were primarily confronted with the accessibility of physical evidence. *See In re Volkswagen,* 545 F.3d at 316; *In re TS Tech,* 551 F.3d at 1321.

■ The notion that the physical location of some relevant documents should play a substantial role in the venue analysis is somewhat antiquated in the era of electronic storage and transmission. "Because electronic information can be accessed conveniently in any number of locations, not simply the location where the information is 'stored,' it does not follow that transfer to the location of the stored information is more convenient for anyone." *Odom v. Microsoft,* 2009 WL 279968 at *3 (E.D.Tex. Jan. 30, 2009).

While Genentech has identified certain categories of documents it believes will be relevant, others are not likely to be found in the Northern District of California. Instead, the documents are identified as being potentially located in different parts of California, Germany, Massachusetts, North Carolina, and Washington, D.C. Because Texas is a centralized location between these far-flung locales, Genentech has failed to show that California would be "clearly more convenient" than Texas for accessing the parties' documents. This factor is neutral.

2. *The availability of compulsory process to secure the attendance of the witnesses*

■ Genentech identifies certain categories of witnesses that, because they are located in the Northern District of California, would be subject to compulsory process in that District, namely former employees of Genentech, the attorneys who prosecuted the patents, and the authors of certain prior art references. Genentech also points out that additional non-party witnesses, such as former Biogen employees, reside in the state of California, though outside of the transferee venue, in the Southern District.

At the same time, Genentech fails to demonstrate that any of these individuals are key witnesses likely to testify at trial. It is highly unlikely that any of the prior art authors, much less the two relatively minor authors identified by Genentech as residing in the Northern District, would have any evidence at all relevant to this case. Prosecuting attorneys would usually testify, if at all, only in connection with willfulness or on equitable defenses. While the Northern District may have subpoena power over three of the prosecuting attorneys, Genentech does not suggest that it does over the remaining nine. None of Defendant Biogen's employees, past or present, are identified as being located within the Northern District. With respect to former employees in general, even if this court cannot compel a witness's attendance, neither party is precluded from using the witness's videotaped deposition at trial. *See Symbol Tech., Inc. v. Metrologic Instruments, Inc.,* 450 F.Supp.2d 676, 679 (E.D.Tex.2006).

Because Genentech has identified specific non-party witnesses located in the Northern District and none are located in the Eastern District, this factor does weigh somewhat in favor of transfer.

However, because there is no indication that any of these are key witnesses who would be unwilling to testify at trial, that any of Defendant Biogen's employees are located in the Northern District, or that videotaped deposition testimony would somehow be insufficient, it weighs only slightly in favor of transfer.

### 3. The cost of attendance for willing witnesses

 The Fifth Circuit's "100 mile" rule applies because the Northern District of California is approximately 1900 miles away from Lufkin, Texas.[7] *In re Volkswagen AG*, 371 F.3d at 205. In *TS Tech*, the Federal Circuit found that this factor weighed in favor of transfer to a Defendant's home district where all of the witnesses were located in or around that district. *In re TS Tech*, 551 F.3d at 1320. At the same time, this factor can be neutral if the transferee district is not convenient for all of the witnesses. *See, e.g., Network–1 Security Solutions, Inc. v. D–Link Corp.*, 433 F.Supp.2d 795, 800 (E.D.Tex.2006) (denying Defendants' motion for transfer when the witnesses were in different geographic locations); *J2 Global Communications, Inc. v. Protus IP Solutions, Inc.*, 2009 WL 440525 at *4 (E.D.Tex. Feb. 20, 2009) (finding this favor neutral where none of the parties are localized in one general geographic area); *Invitrogen v. General Elec. Co.*, 2009 WL 331889 at *3 (E.D.Tex. Feb. 9, 2009) (finding that this factor was neutral where the transferee district would be more convenient for Defendants' witnesses but less convenient for Plaintiff's witnesses). The convenience of the parties and their witnesses is given less weight in a transfer analysis than the convenience of non-party witnesses.

*Williams v. Toyota Motor Corp.*, 2008 WL 5158583 at *3 (E.D.Tex. Dec. 9, 2008).

Genentech has identified a number of current and former employees of both companies who are located somewhere in California, either in the Northern or the Southern Districts. Other than these witnesses, Genentech also identifies five other individuals residing in the Northern District, namely the two prior art authors and three prosecuting attorneys discussed above.

On the other hand, Genentech again fails to argue that any of these individuals are key witnesses. None of Defendant Biogen's employees, past or present, are identified as being located in the Northern District. The remaining list of possible witnesses includes individuals located in eleven different countries and nineteen different states. Because Lufkin is a more centralized location than San Francisco for these far-flung potential witnesses, Genentech cannot show that the transferee district would be "clearly more convenient" for these witnesses.

It is also worth pointing out that the actual costs of appearing as a witness at trial in San Francisco, California, from the parking rates to the prices of hotel rooms and meals, are far greater than they would be in Lufkin, Texas. While this factor weighs in favor of transfer, it does so only slightly.

### 4. All other practical problems that make trial of a case easy, expeditious, and inexpensive

 The issue of whether personal jurisdiction exists in the Northern District of California declaratory judgment suit weighs heavily against transfer. While

---

7. The Northern District of California extends from Del Norte County in the northern end to Monterey County in the south. The mileage figure is calculated based on Lufkin's proximity to San Francisco, which is where Genentech's facility, and the federal court in which Genentech filed its declaratory judgment action against Sanofi, is located.

this court will not opine on the merits of a motion to dismiss not before it, district courts have generally been reluctant to transfer venue in a case where the issue of personal jurisdiction over the Plaintiff in the transferee venue is somewhat unclear.[8] If this case were transferred to California, it is very possible that the Northern District could find that jurisdiction does not exist in the declaratory judgment case. On the other hand, if Sanofi's claims remain here, Genentech and Biogen may bring their declaratory judgment allegations as counterclaims. The Northern District would not need to decide the potentially complex question of whether a California court has personal jurisdiction over a foreign company with no offices in the United States, but could instead simply dismiss Defendants' indisputably later-filed declaratory judgment suit under the "first to file" rule. *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed.Cir. 1993) (the "first to file" rule "favors the forum of the first-filed action, whether or not it is a declaratory judgment action.").[9] Evidentially, in the California case, the parties have been filing documents measured by the linear foot, rather than by the number of pages.[10] This court's natural

inclination would be to welcome an excuse to avoid dealing with a case involving parties given to such excess. However, retaining the case would obviate the need for the California court to invest substantial resources dealing with troublesome jurisdictional issues. Judicial economy would be promoted by keeping this case here.

It is also important to note that Defendant Genentech has, in the past, seen the Eastern District as a convenient forum to litigate as a Plaintiff. Genentech filed a patent infringement case against MedImmune here in 2006 where, as in this case, venue against MedImmune was premised solely on the fact that the allegedly infringing products were sold in the Eastern District. Genentech cannot avail itself of the Eastern District's courts when it suits them, only to complain little more than two years later that the Eastern District is an inconvenient venue in a subsequent suit.

Finally, resolution of this case is likely to be less costly if it remains in the Eastern District of Texas. Costs for food and lodging, counsel, staff, witnesses, and the expense of temporary office space for out-of-town counsel are significantly lower in

**8.** *See, e.g., Aerotel, Ltd. v. Sprint Corp.*, 100 F.Supp.2d 189, 198 (S.D.N.Y.2000) (where Plaintiff was an Israeli corporation who sued for patent infringement in the Southern District of New York and one Defendant subsequently brought a declaratory judgment suit in the District of Kansas then moved to transfer the New York case to Kansas, the district court denied the motion, stating "If I were to transfer this case to Kansas only to find the Kansas court lacks jurisdiction over [Plaintiff], [Plaintiff] would, in effect, have no remedy other than bringing another action in this or some other forum. Surely such a result is not in the interests of justice."); *Tape & Techs., Inc. v. Davlyn Mfg. Co., Inc.*, 2005 WL 1072169 at *4 (W.D.Tex. May 6, 2005) (where Plaintiff was a Texas corporation, Defendant was a Pennsylvania corporation, Defendant filed a patent infringement action in the Eastern District of Pennsylvania, and Plaintiff sub-

sequently filed a declaratory judgment action in the Western District of Texas, the district court denied Defendant's motion to dismiss in the Western District because "[t]here remains a question of whether the Eastern District of Pennsylvania may properly exercise personal jurisdiction over Plaintiff.").

**9.** Federal Circuit, rather than Fifth or Ninth Circuit, law governs the application of the "first to file" rule where the overlapping suits arise under federal patent law. *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345–46 (Fed.Cir.2005).

**10.** *See* Case No. 3:08–cv–4909, Doc. # 81 ("The Court was unable to locate plaintiffs' L.R. 37–2 filing amid the 2 feet of documents that were filed in connection with plaintiffs' motion to compel.").

Lufkin than they would be in San Francisco.

The uncertainty of personal jurisdiction over Sanofi in California, Genentech's previous use of this forum as a Plaintiff, and consideration of the increased costs the parties would incur were this case tried in California indicate that, on the whole, this factor weighs strongly against transfer.

## C. Public Interest Factors

### 1. The administrative difficulties caused by court congestion

 Genentech suggests that the most recent Federal Judicial Caseload Statistics indicate that cases in the Northern District of California reach disposition more quickly than cases in the Eastern District of Texas—9.7 months from filing to disposition in the Eastern District, as opposed to 7.4 months in the Northern District. Def. Mot. Transfer, Ex. 17, at pp. 3–4 [Doc. # 32]. While this assertion is true when all cases are factored in, the disposition time in cases which actually go to trial is lower in the Eastern District—18.4 months—than in the Northern District— 25.5 months. *Id.*[11] Sanofi also points to a 2008 patent litigation study, which found that in the twenty most active patent districts in the country, the fifth-ranked Eastern District had a much faster median time-to-trial interval—1.79 years—than the sixteenth-ranked Northern District— 2.87 years. Pl. Resp., Ex. 25, at p. 12 [Doc. # 38].

The court also notes that while no Scheduling Order has issued in this case, the Order Governing Proceedings tentatively set trial for May 11, 2010, just over eighteen months after Sanofi filed suit in October 2008. Doc. # 21 at p. 16. The California court handling Genentech's declaratory judgment action has not set any trial date, having continued the Case Management Conference and hearing on the jurisdictional motion to June 5, 2009. Case No. 3:08–cv–4909, Doc. # 85.[12] This factor weighs against transfer.

### 2. The local interest in adjudicating local disputes

 Defendant Genentech has an interest in having this case tried in the Northern District of California, where it conducted much of the research and development on eight of the nine accused products. At the same time, while none of the parties maintains a research or commercial presence in the Eastern District of Texas, neither Defendant Biogen nor Sanofi is located in the Northern District of California. The residents of the Eastern District of Texas also have an interest in the outcome of this case, as the allegedly infringing products are pharmaceuticals sold in this District. This factor weighs slightly in favor of transfer.

### 3. The familiarity of the forum with the law that will govern the case

 The courts of the Northern District of California are well known for han-

---

11. Another relevant statistic might be each individual judge's caseload. Neither side provides this number to the court, but this court's own total weighted filings—criminal, civil prisoner, and civil non-prisoner cases—between March 1, 2008 and February 28, 2009 was 483, with 264 civil non-prisoner filings. *See* http://www.txed.circ5.dcn/Resources/Stats/Stats.html (February 2009 weighted statistics). On the other hand, while the court could not obtain the most current statistics for each individual judge in the Northern

District, the average number of total weighted filings per judge from October 1, 2007 through September 30, 2008 in that District was 592, with 441 civil filings. *See* http://www.uscourts.gov/cgi-bin/cmsd2008.pl.

12. Perhaps the delay is because Genentech, as already noted, has been somewhat remiss in specifically pointing out its requests, choosing instead to favor the California court with a voluminous sheaf of unnecessary paper. *See* Case No. 3:08–cv–4909, Doc. # 81.

dling a docket of complex civil and criminal cases, including patent litigations. Judges in the Eastern District of Texas are also very familiar with intellectual property litigation. This factor is neutral.

### 4. *The avoidance of unnecessary problems in conflict of laws*

As federal patent law will apply to most of the issues in this case, there is no conflict of laws problem. This factor is neutral.

## IV. Conclusion

After careful analysis of the private and public interest factors, the court concludes that transfer is not warranted in this case. Private interest factor 1 is neutral. Private interest factors 2 and 3 both weigh slightly in favor of transfer, but factor 4 weighs strongly against transfer. Public interest factor 1 weighs against transfer, while factor 2 weighs slightly in favor of transfer. Public interest factors 3 and 4 are neutral.

Key to the court's decision are the facts that Defendant Genentech has, in the recent past, found it convenient to avail itself of this forum as a Plaintiff; the question of whether Sanofi is subject to personal jurisdiction in the Northern District remains an open one, and significant judicial resources could be saved by retaining the case, thus mooting that question; Defendant Biogen has no presence—corporate, research, or otherwise—in the Northern District; litigation in California would be more expensive and quite possibly more time-consuming; cases which proceed to trial in the Eastern District, especially patent cases, are resolved in significantly less time than they are in the Northern District; and, despite the fact that none of the parties has a research or corporate presence in this District, the residents of the Eastern District have an interest in the outcome of this case because the allegedly infringing products are pharmaceuticals are sold

here. Genentech simply has not carried what the Fifth Circuit has described as a "significant burden" to show that the Northern District of California is a "clearly more convenient" venue. *In re Volkswagen*, 545 F.3d at 314, n. 10, 315.

IT IS THEREFORE ORDERED that Defendants Genentech, Inc. and Biogen Idec, Inc.'s Motion to Transfer Venue [Doc. # 31] is DENIED.